**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| MARY E. GARCIA,<br>　　Plaintiff, | )<br>)<br>) |
| v. | )　　CAUSE NO.: 1:19-CV-356-HAB-JEM |
| | ) |
| ANDREW M. SAUL, Commissioner of<br>the Social Security Administration,<br>　　Defendant. | )<br>)<br>) |

**FINDINGS, REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE PURSUANT TO**
**28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Mary E. Garcia on August 15, 2019, and Plaintiff's Brief in Support of Complaint for Review [DE 11], filed November 29, 2019. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On February 7, 2020, the Commissioner filed a response, and on February 18, 2020, Plaintiff filed a reply.

On November 6, 2019, Judge Holly A. Brady entered an Order [DE 10] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant Motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the decision of the Administrative Law Judge be reversed and remanded.

**I.　　Background**

On February 18, 2016, Plaintiff filed an application for benefits alleging disability beginning September 3, 2015. Plaintiff's application was denied initially and upon reconsideration.

1

On May 2, 2018, Administrative Law Judge ("ALJ") John Carlton held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On August 22, 2018, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant has not engaged in substantial gainful activity since February 18, 2016, the application date.

2. The claimant has the following severe impairments: degenerative joint disease of the left knee, asthma, obesity, diabetes, depression, borderline personality disorder, and posttraumatic stress disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. The claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(b) except she is limited to: no climbing of ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, crouch, crawl, and kneel. She needs to work indoors in a temperature-controlled environment with no exposure to excessive heat, humidity, dusts, odors, pollen, gases, or other pulmonary irritants, but would be able to work in a typical office environment. She cannot work around unprotected heights or around dangerous machinery. She can perform simple routine work, not done at production rate pace. She can interact with and react appropriately with supervisors, coworkers, and the general public on an occasional basis.

5. The claimant is not capable of performing past relevant work.

6. The claimant was a younger individual age 18-44, on the date the application was filed.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

2

> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, from February 13, 2015, through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

## II.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d

614, 618 (7th Cir. 2010) (*O'Connor-Spinner I*); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner I*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**III.   Analysis**

Plaintiff argues that the ALJ disregarded Plaintiff's likely absences in finding that she would be able to maintain competitive employment, erred in evaluating Plaintiff's limitations, and improperly assessed Plaintiff's impairments. The Commissioner argues that the opinion is supported by substantial evidence.

4

Plaintiff argues that the ALJ erred in analyzing Plaintiff's impairments and determining how her mental health difficulties affect her ability to keep a job. The ALJ found that Plaintiff experienced moderate limitation in concentrating, persisting, or maintaining pace, with difficulty competing tasks and concentrating in general. In the RFC, he limited Plaintiff to "simple routine work, not done at a production rate pace," with only occasional interaction with other people, but did not explain how these limitations incorporated her difficulties with pace, completing tasks, and concentration.

The Seventh Circuit Court of Appeals has repeatedly held that limiting a claimant to unskilled work or simple, routine or repetitive tasks is not sufficient to account for difficulties in concentration, persistence, or pace because "[t]he ability to stick with a task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner I*, 627 F.3d at 620-21; *see also Jelinek v. Astrue*, 662 F.3d 805, 813-14 (7th Cir. 2011) (concluding that limitations to sedentary and light unskilled work did not "address[] the impact of the mental limitations . . . which . . . limited [the plaintiff's] ability to maintain regular work attendance, to carry out instructions, and to deal with the stresses of full-time employment"); *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (limitation to unskilled work did not account for limitations in concentration, pace, and mood swings); *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004) (concluding that a limitation of "simple, routine, repetitive, low stress work with limited contact with coworkers and limited contact with the public" was inadequate to take into account

5

the claimant's limitations). Likewise, "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp v. Berryhill*, 916 F.3d 671, 675-76 (7th Cir. 2019) (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016) (*O'Connor II*)); *see also Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014) ("[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.").

In this case, the hypothetical question posed to the VE included the limitations that were reflected in the RFC but did not include any explicit mention of Plaintiff's limitations in concentration, persistence, and pace. It is not apparent that the VE had enough information about Plaintiff's limitations in ability to stay on task over time to make an informed judgment on the jobs available to someone with her abilities. *See DeCamp,* 916 F.3d at 675-76 ("[W]e have 'repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.' Moreover, the vocational expert did not review [the plaintiff]'s medical records, which could have excused the ALJ from stating all [the plaintiff]'s limitations.") (quoting *Yurt*, 758 F.3d at 858–59) (citing *Winsted v. Berryhill*, No. 18-2228, 2019 WL 494052, at *4 (7th Cir. Feb. 8, 2019); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015)). Indeed, the VE also testified that the jobs he described require employees to remain on task for approximately 85 percent of the workday and miss no more than an average of one day per month. It is not apparent whether Plaintiff's limitations in concentration, persistence, and pace would

6

enable her to maintain that amount of time on task. Plaintiff also argues that she would not be able to meet the attendance requirements as testified to by the VE. She asserts that she attends physician appointments and therapy appointments at least four times but as many as twelve times in a given month. The VE testified that absences exceeding one per month would exclude full-time competitive employment, but absences were not addressed by the ALJ.

In addition to the insufficient questions posed to the VE, the Court is also concerned with other aspects of the ALJ"s treatment of Plaintiff's mental illness. Plaintiff has been diagnosed with multiple mental impairments and has sought treatment for her depression, anxiety, borderline personality disorder, and PTSD. The ALJ noted the state agency medical consultants' opinions that Plaintiff suffered from limitations in memory, sustained concentration and persistence, and social interactions, as described above, although he did not give full weight to these opinions because he found that the record also includes documentation that Plaintiff is sometimes calm and cooperative, with fair hygiene and intact memory at her mental health appointments. The Court is concerned that the ALJ demonstrated a misunderstanding of mental illness or willful cherry-picking of the record to support his conclusions.

For example, the ALJ explicitly gave little weight to all of the GAF scores in the record without mentioning them, characterizing them as snapshots that "do not provide a reliable longitudinal picture of the claimant's mental functioning." Although the ALJ is correct that a GAF is a "snapshot" of functioning and is not determinative of disability, *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), a GAF of even 50 – which is higher than any GAF score in the record, and significantly higher than most referred to by the ALJ (*see* AR 22 referring to exhibits that include GAF scores of 38, 38, 41, 45, 47, and 44) – is a score that indicates serious limitations.

7

*See e.g.*, *O'Connor-Spinner II*, 832 F.3d at 693 ("[Plaintiff]'s GAF score once again was recorded as 50, indicating serious symptoms or functional impairments."); *Campbell v. Astrue*, 627 F.3d 299, 306-07 (7th Cir. 2010) ("A GAF rating of 50 does not represent functioning within normal limits. Nor does it support a conclusion that [the plaintiff] was mentally capable of sustaining work."). An ALJ "cannot rely only on the evidence that supports [his] opinion." *Yurt*, 758 F.3d at 859 (quoting *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)). The ALJ noted that Plaintiff had "mental status abnormalities," including sad mood, anxious appearance, anxious affect, flat or conflicted affect, and poor hygiene, but disregarded these treatment notes because there were other occasions where Plaintiff had fair hygiene and appropriate mood and affect. As Plaintiff argues, it appears that the ALJ "cherry-pick[ed] facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton*, 596 F.3d at 425; *see also, e.g., Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("Even if we accept the [single] treatment note as evidence that [the plaintiff] enjoys a few 'good days,' that evidence still offers no support for the ALJ's finding that her mental illness does not prevent her from holding a job."); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("[S]ymptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression. 'A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.'") (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)).

Plaintiff also argues that the ALJ did not properly weigh the evidence in evaluating Plaintiff's description of her symptoms and limitations and made a conclusory statement regarding Plaintiff's symptoms rather than thoroughly evaluating her claims. After describing Plaintiff's testimony about her symptoms and limitations, the ALJ stated that "the undersigned finds that the

8

claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." AR 18.

The ALJ is required to consider Plaintiff's allegations of pain and limitations and "evaluate whether [Plaintiff's] statements are consistent with objective medical evidence and the other evidence" and "explain" which symptoms were found to be "consistent or inconsistent with the evidence." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017), at *6, *8; *see also Zurawski*, 245 F.3d at 887 (remanding where the ALJ failed to "explain[] the inconsistencies" between a claimant's activities of daily living, his complaints of pain, and the medical evidence) (citing *Clifford,* 227 F.3d at 870-72). "[T]he absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts." *Ghiselli v. Colvin,* 837 F.3d 771, 777 (7th Cir. 2016); *see also Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014) ("[T]he ALJ erred in rejecting [the plaintiff]'s testimony on the basis that it cannot be objectively verified with any reasonable degree of certainty. An ALJ must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain.").

Plaintiff argues that the ALJ merely listed her activities and summarized her medical records, without thoroughly analyzing why her statements of limitation are inconsistent with that medical evidence. As described above, the ALJ cherry-picked evidence of better days and mild improvements to discount Plaintiff's claimed mental limitations, and he similarly emphasized notes from physical examinations that show normalcy or stability rather than analyzing how the records conflict with her claimed limitations. For example, he stated that her diabetes was "stable"

9

and "somewhat controlled," although there were "some compliance issues noted," but did not examine how "somewhat controlled" diabetes could affect Plaintiff's functioning nor consider Plaintiff's reasons for the purported lack of compliance. AR 19. This is inadequate analysis. *See* SSR 16-3p, 2017 WL 5180304 at *8; *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p, 1996 WL 374186 (July 2, 1996)). This is particularly so when mental illness is implicated. *See, e.g., Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) (noting that mental illness may prevent the patient from "submitting to treatment"). The ALJ noted that Plaintiff had arthritis and maltracking in her knee, as well as degenerative changes, and also described examination results showing edema and reduced gait, among other symptoms, but emphasized the normal portions of the examinations and did not explain why the medical evidence was inconsistent with her claimed limitations, particularly her claims of pain.

The ALJ also highlighted a few aspects of Plaintiff's daily activities, apparently as reason to disregard her statements about her limitations. In particular, he stated that Plaintiff is able to "do some chores if seated, use public transportation, play computer games, manage her personal care and grooming, and provide part-time child care to a six year old." AR 23. These limited activities do not counteract the testimony that Plaintiff needs assistance with many activities of daily life, nor does the ALJ explain how they are inconsistent with Plaintiff's claims of pain and physical

limitation caused by her claimed impairments. Furthermore, the ALJ is reminded that the Seventh Circuit Court of Appeals has repeatedly criticized ALJ decisions that equate a plaintiff's ability to take care of personal hygiene or household chores with the ability to work and fail to take into account "critical differences between activities of daily living and activities in a full-time job," such as the fact that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see also, e.g., Roddy*, 705 F.3d at 639 ("[A] person's ability to perform daily activities, especially if that can be done only with significant limitations, does not translate to an ability to work full-time."); *Punzio*, 630 F.3d at 712 ("[The plaintiff]'s ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work."). The Court is unable to trace the logic between the ALJ's recitation of medical evidence and his determination of Plaintiff's work-related limitations, particularly because it is not apparent why he disregarded Plaintiff's statements regarding her own pain and limitations, nor which of those statements he disbelieved. On remand, the Court reminds the ALJ of the requirement to include specific reasons for the weight given to Plaintiff's claimed symptoms in accordance with the applicable regulations. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304; *Clifford*, 227 F.3d at 872 (remanding where "the ALJ stated, in a conclusory

11

manner, that [the plaintiff's] testimony regarding the limitations placed on her daily activities was unsupported by the medical evidence").

The tendency to highlight facts supporting a finding of non-disability while glossing over those indicating difficulties is seen throughout the opinion. Plaintiff argues that the ALJ emphasized evidence that supported a finding of non-disability and failed to consider the limiting effects of some of Plaintiff's other impairments, such as her migraines and the need to elevate her legs due to lower extremity edema. The Court recommends remand because of the errors described above, and on remand reminds the ALJ of the requirement to "consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."). In particular, the ALJ is reminded of the need to "consider the limiting effects of obesity when assessing a person's RFC," analyzing whether "the functional limitations caused by the MDI of obesity, alone or in combination with another impairment(s), may medically equal a listing." SSR 19-2p, 2019 WL 2374244, *3-4 (May 20, 2019). The Court recommends that the case be remanded for the reasons stated herein. On remand, the ALJ is reminded of the requirement to consider the combination of Plaintiff's impairments, even those that are not severe in isolation, and to specifically address any additional limitations caused by the combination of impairments.

The ALJ erred in his assessment of whether Plaintiff's mental health limitations foreclose her from employment, erred in his analysis of her statements regarding her pain and physical limitations, and cherry-picked statements of stability or improvement to discount the limitations

12

described in the record. The ALJ is reminded of his responsibility to create a logical bridge between the evidence and his conclusions to allow for meaningful review, and to obtain additional information as needed. *O'Connor-Spinner I*, 627 F.3d at 618; *Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.").

### IV. Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that the District Court **GRANT** the relief requested in Plaintiff's Brief in Support of Complaint for Review [DE 11] and **REMAND** this matter for further proceedings consistent with this Report and Recommendation.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 15th day of June, 2020.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:  All counsel of record
     Judge Holly A. Brady

13